Case number 213479 Wesco Insurance Company v. Roderick Linton and Belfance LLP, et al. Argument not to exceed 15 minutes per side. Mr. Patakos, you may proceed for the appellant. Thank you. Good morning. May it please the court. My name is Peter Patakos and I represent appellants Daniel Bache and Jason Wallace. I would like to reserve five minutes of time for rebuttal. That's fine. Thank you. This appeal calls on this court pursuant to its diversity jurisdiction to analyze Ohio insurance law to decide whether the district court erroneously held that Appley Wesco Insurance had no duty to defend Bache and Wallace in a group of lawsuits that were filed by various school districts in Northeast Ohio that Bache and Wallace had been litigating against on behalf of their clients. Before we get into the merits, do you mind? We have an independent duty to assure ourselves of our appellate jurisdiction and there's an esoteric jurisdictional question that I had about the dismissal. So Wesco was granted judgment and then there was some cross claims between your client, Mr. Bache and the law firm and they were dismissed or voluntarily dismissed. It wasn't clear to me that that was with prejudice. If it was without prejudice, it might raise some jurisdictional issues, but I think we can clarify on the record if you would just, was it with prejudice? Does your client intend to pursue any claims against the law firm elsewhere? No, those claims have been released entirely. If it was not dismissed without prejudice, that is an error on my part. I do not have to- I just didn't say either way. So that's all I wanted to clarify. Thank you. I appreciate that. Thank you. That should be clear that there is no intent to proceed against Roderick Lane, that the only claims remaining in this case are between Mr. Bache and Mr. Wallace on one hand and Wesco Insurance on the other. So this appeal calls on this court to decide whether the district court erred in holding that Wesco had no duty to defend Bache and Wallace in these lawsuits. And we submit respectfully that this court's determination only requires it to analyze a single question that we further submit is decisively answered by well-settled principles of Ohio law governing the interpretation of insurance contracts. That is, does the provision in the party's contract excluding the term sanctions from covered damages inarguably and unambiguously apply to exclude an award of attorney's fees under the fee-shifting provisions of the Individuals with Disabilities Education Act? That is, I'll refer to it as the IDEA. A statute that expressly defines such awards as, quote, a part of the costs. We respectfully submit that the answer to this question must be no, thus requiring reversal pursuant to a rather simple two-part analysis. And this analysis starts with binding Ohio insurance law holding that where policies of insurance that are drafted by the insurer, those policies must be strictly construed against the insurer. And any ambiguities especially must be strictly construed against the insurer. It is an undisputed fact here that Wesco drafted this policy. And as for what it means to strictly construe such a policy against the insurer, the drafter, the Ohio Supreme Court has also provided a clear and well-established framework. Here we can start with the Munchik case from the Ohio... Well, can I ask you just to, it strikes me as fairly unambiguous. If suppose it wasn't under this IDEA provision, but the sanction or the attorney's fees award for filing of frivolous complaints was under Rule 11, Federal Rule of Civil Procedure 11, would you concede then that it would qualify as a sanction because it would be a the rule itself says a violation of ban against filing frivolous pleadings as a sanction? I believe Rule 11 is expressly defined as a sanction. But do you think that, so is that, does that mean that you would agree? I'm not sure that I would concede that, Your Honor. I haven't considered it. I haven't, you know, that's not the question that we were asked to answer. But I certainly would concede that it would be a much different question. But here I believe... I don't know that it, I don't know that it is because the provision in the IDEA is written very similarly to the Rule 11. And in that it prohibits or it allows for fees for litigation undertaken for an improper purpose or for litigation that is frivolous. There's an and I think historically courts would view monetary awards for engaging in what courts find to be frivolous or harassing litigation to fall within the plain meaning of a sanction. Your Honor, I wouldn't necessarily argue with that, but I would suggest that that's not the question that's before the court. The question before the court is whether there is another reasonable interpretation. That where words used in a policy bear more than one reasonable meaning and a policy could have been phrased to present any mistake, then the policy must be interpreted in favor of the insured. So I might agree with you that this could reasonably be described as a sanction, but the question isn't that. The question is whether there is another possible reasonable interpretation. And as the Peterson decision, the Ohio Supreme Court's Peterson decision says, ambiguous terms should be given an interpretation as favorable as is reasonably possible. And more specifically, whether it's ambiguous or not, getting to that question in cases specifically analyzing exceptions or exclusions in an insurance contract like the one at issue here, Ohio law says that which is not clearly excluded is included in the operation therefore. That's the Anderson v. Highland House case. And relatedly in the Anderson case, where an insurer claims that an exclusion applies, the insurer must establish not merely that the policy is capable of the construction it favors. And here I would agree that it is is the only one that can fairly be placed on the language in question. Because it is clear and undisputed that insurers do have an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered. So which brings us to the second and final part of the analysis. This is a common question that we as federal courts face is how much ambiguity is enough? We face it in kind of federal administrative law questions, statutory interpretation questions. What is the reasonable reading under which sanction would not include the payment of fees for engaging in kind of frivolous conduct? I would say set forth most effectively in our reply brief. But these reasons that a fee award can reasonably be considered as something other than a sanction are several, starting with the fact that the statute itself not only does not refer to sanctions or penalties, but expressly that such awards are to be made as part of costs. Additionally, Ohio courts have expressly rejected the notion that attorney's fees are a punitive remedy. We see Roberts v. Mike's trucking quoting Zoppo in Ohio Supreme Court case and have expressly held that fee awards are an element of compensatory damages. I would add that Ohio courts and real quick, the state law that I saw, the question is it depends, right? I agree with you. If a contract said a breach allows the party to seek attorney's fees, for instance, I would view that as compensatory. I think it really just depends on the underlying cause of action under which the attorney's fees are awarded. In the Ohio case, the one that distinguished punitive damages from attorney's fees, the Ohio case interpreted Ohio tort law to say that attorney's fees were compensatory. It really comes down to, in my mind, how we should categorize the fees under the federal statute. Are they compensatory or are they punitive? That's where I tend to think that the real dividing line is the reason why they're awarded. Are they awarded because you engaged? I would suggest, your honor, that the answer to this question is found in the Munchik case by the Ohio Supreme Court where the question is really when the words used in a policy bear more than one reasonable meaning and the policy could have been phrased to prevent any mistake, such as where the insurer could have clearly excluded a loss arising under the circumstances of a case, then that policy must be interpreted in favor of the insured. Here, there is a reasonable reading for the reasons we have set forth in the reply brief that attorney's fees are something other than a sanction. It was the insurer's duty to write its policy clearly. It could have said attorney fee awards. It could have said attorney fee awards under certain statutes. It said neither. I will rest there subject to rebuttal unless the court has any further questions. Okay. Thank you. You'll have your full rebuttal. Mr. Stalker. Good morning, Judge Cole, Judge Murphy, Judge Larson, and Mr. Patakos. May it please the court, my name is Sam Stalker. I represent the Appellee in this matter, Westco Insurance Company. I thank you for your time and allowing us to argue today. I'd like to start, if I may, by addressing a question Judge Murphy posed to Mr. Patakos, which is whether a similar award of attorney fees under Rule 11 would constitute a sanction. This court, in its decision in Whitehall v. Birmingham Schools, held that the legislative history of the IDEA fee-shifting provision clearly indicates that the provision was intended to mirror Section 1988, the fee-shifting provision related to civil rights cases, as well as Rule 11 of the Federal Rules of Civil Procedure, which Judge Murphy mentioned, both of which provide mechanisms for sanctioning attorneys for filing or continuing to pursue frivolous actions or actions without proper purpose. I'll note that while Rule 11 does use the word sanction, the word sanction does not in Section 1988. Should we look at the function of the provision and what it's really doing, or should we look at the label? One is called costs and the other is called sanction. Why shouldn't that be the approach, just the label used? The court has to look at what the provision or the statute is doing in the case of the IDEA fee-shifting provisions. It's sanctioning attorneys for filing frivolous actions or continuing to litigate frivolous actions. As for costs, the appellants in this case admit in their brief that the only relief sought by the school districts in the underlying matters was under the fee-shifting provision. It's common for sanctions to include an award of $100,000. The IDEA provision is labeled costs or attorney's fees as part of the costs, whereas Rule 11 defines the attorney's fees as a sanction for violating the ban on filing frivolous pleadings. I'm curious whether that form or the label that Congress or the Supreme Court, the drafter of the rules used, should matter in our analysis. I assume your response is no, it shouldn't, and you should look to the function, of course. But I'm curious to get your thoughts on why we should look to the substance behind it rather than just the label that is used. Well, Your Honor, the use of the word sanction or the way the particular statute is labeled or titled doesn't really make a difference if they function in the same manner. Rule 11 and Section 1988 are both intended to sanction attorneys for filing frivolous lawsuits or actions or continuing to litigate frivolous actions, which exactly mirrors the language, intent, and function of the IDEA fee-shifting provision. And this Court has held that the and the same as Rule 11. One of them, Rule 11, uses the word sanction. The other, Section 1988, doesn't use the word sanction. But what's important is how they function. And then courts around the country have also held that the IDEA fee-shifting provision is a sanctioning operation. In, for example, the Anchorage, Nahas, and Smith decisions that West Coast cited in its brief, the courts concluded that the IDEA fee-shifting provision is an authorized sanction against parents and attorneys who bring or continue to prosecute frivolous claims, even though not all of those decisions actually impose the sanctions because the courts didn't find that the principal IDEA claims were frivolous. That's not the case here. Mr. Wallace and Mr. were found to have filed and continued to prosecute frivolous claims in all of the underlying matters. And then when we look again at construing the IDEA fee-shifting provision, consistently with Section 1988 and Rule 11, as this Court held in the Whitehall decision, when we see it in practice, in terms of how those provisions are enforced, including by this Court, we see that it's completely consistent with the enforcement of the IDEA fee-shifting provision. In Riddle v. Egensberger, this Court held that an award of attorney fees under Section 1988 against a losing plaintiff in a civil rights action is an extreme sanction limited to truly egregious cases of misconduct, and that a prevailing defendant should only which perfectly mirrors the language used in the IDEA fee-shifting provision. And then when we look at the enforcement of Section 1988, it's consistent with that standard, the enforcement of the fee-shifting provision under the IDEA, it's consistent with that standard, as evidenced by the fact that many of the decisions holding that the IDEA fee-shifting provision is a sanction have ultimately held that the attorney's conduct did not rise to that elevated misconduct required to warrant sanctions under the fee-shifting provision. Can I switch briefly just from federal law to just Ohio contract law, insurance law principles? I think your friend on the other side has conceded that your reading is a perfectly plausible one. Clary, how much ambiguity must there be for us to find an ambiguity under Ohio insurance law? If we find that your reading is the best reading, is that enough to make it unambiguous even if their reading is plausible? Or what is the standard of ambiguity in your view under Ohio insurance law? Well, Mr. Wallace and Mr. Bache seek to impose a standard whereby an insurer has a duty to defend under any circumstance in which the insurer disagrees with the insurer's coverage, defense, or disclaimer. That's not the standard and that would be impractical because I would imagine that every time an insurer denies a duty to defend or identify, the insurer disagrees. That doesn't make coverage arguable. I'm sorry, I'm not sure that's quite fair. He doesn't say anytime the insured disagrees. He agrees that a court or somebody must agree that it's a reasonable disagreement. State law in insurance varies about when a state court will find an insurance contract ambiguous and how much to read in favor of the insured. In Michigan, it's really, really hard to find ambiguity. That's the Michigan law. There's no real presumption in favor of the insured. We're trying to ask about Ohio. I don't think he says anytime there's a dispute. I think he says anytime there's a reasonable dispute. I guess the question is, what does reasonable look like under Ohio insurance law? Well, Judge, initially the appellants argued that it was not even the district court's job to determine whether the attorney fee awards sought by the school district were or were not sanctions, which puts blinders on the district court and seeks to put blinders on this court when you're saying that the court can't even interpret the policy to decide whether the claim falls within coverage. But in terms of ambiguity, Ohio courts have consistently held that a contract term is not ambiguous simply because it's not defined in the policy or because the parties disagree about its meaning. A sanction is defined in Black's Law Dictionary and as adopted by Ohio courts, including in the Simikowski v. State Auto case, is a penalty or coercive measure that results from failure to comply with the law, rule, or order, which perfectly matches the function of the IDEA fee-shifting provision, Section 1988 dealing with civil rights cases, and Rule 11 of the Federal Rules of Civil Procedure. As the court held in the Stafford case, which is actually a decision relied upon by the appellants, the most critical role in construing coverage prevents courts from rewriting a contract when the intent of the parties is evident and the words and phrases used therein must be given their natural and commonly accepted meaning. I'll note that the appellants make no substantive arguments in their brief that the term sanctions is ambiguous or point to case law that supports that other than naked statements that that it is ambiguous, nor do they make any effort whatsoever to address or distinguish the case law relied upon both WESCO and the district court, which characterizes the relief available under the IDEA fee-shifting provision as a sanction. The policy language at issue in this case is unambiguous. It seems like the argument really, I agree with you, it seems like both parties agree with the words, what the word sanction means, and it's really application here that they're disputing. And I guess the counter argument for why this shouldn't be deemed a sanction even under that definition would be when you pick an award that's designed to punish, it doesn't necessarily have to have a relation to the victim's injury. Whereas here, when you say you're entitled to attorney's fees, it does have, at least in the abstract, some type of compensatory component, which means it's not necessarily punitive because it's tied to the victim's injury rather than just mere punishment in the abstract. So I wonder if you could talk about that further. You see the point I'm making? You could have said if it's a frivolous finding, we're going to punish you in the amount of $1,000 per something or other, an abstract number, which makes it clear that it's designed as a penalty. But here it's a compensatory component to them. I do understand the point, Your Honor. And I would say that, first of all, even though it's not $1,000 or $10,000, what the fee-shifting provision is saying is if an attorney files a frivolous action under the IDEA or continues to pursue a frivolous action under the IDEA, then the sanction is you have to cover the other side's attorney fees. The Neil Pettit decision, which the appellants relied heavily upon in their briefing, was a case that involved punitive damages and an award of attorney fees where the court said punitive damages and attorney fees are separate. In that case, the court held that even though punitive damages and attorney fees had similar bases, they were distinct types of relief. But that's not the case here. As an initial matter, since there's a lot of discussion about punitive damages in the appellant's briefing, no punitive damages were sought or awarded in the school district's actions. And in fact, the IDEA doesn't provide a means for recovering punitive damages. In Neil Pettit, attorney fees were awarded separately from punitive damages, and the court accordingly found them to constitute separate relief. Here, there's no other type of relief from which the awarded attorney fees and costs are derived. Rather, the attorney costs and fees awarded under the fee-shifting provision are the sanctions. Stated differently, an IDEA sanction against an attorney who filed or continued to litigate a which is supported by a litany of decisions cited by Westville in the district court, which appellants elected to ignore completely in their brief. And I see that I just have a couple minutes left. One point, if I may, and if you have more questions, of course, I'm happy to answer them. I do want to address something that Mr. Kitaka said or suggested, that Westville has the burden of proof that an exclusion applies here. This isn't an exclusion. This matter concerns whether the insuring agreement requirements have been satisfied such that the appellants are entitled to a grant of initial coverage under the policies rather than the application of an exclusion. Ohio courts have held that where a disputed provision in an insurance policy is not an exclusion, but rather a definition of terms, the insured has the burden of proof. And so the appellants have to demonstrate that they were legally obligated to pay to the school district covered damages as stated in the insuring agreement and the policies. And in order to do that in this instance, it would require showing that the award did not constitute a sanction. However, the appellants have made no effort to argue substantively that the term sanctions is ambiguous or to attach an alternative definition to sanctions such that it may not apply to the award, nor have they sought to distinguish any of the many decisions holding that the fee-shifting awards are sanctions. Having failed to meet its burden of establishing an initial grant of coverage under the Westville policies by showing that the insuring agreement requirements have been satisfied, the appellants cannot prevail in this appeal. And Westville Insurance Company would request that this court affirm the district court decision. Okay. Thank you, Mr. Stalker. Mr. Patakos, you have five minutes of rebuttal. Thank you. I would like to start by emphasizing that we are absolutely not seeking to put blinders on the district court. In fact, we're asking for the precise opposite. What we're asking for is the district court be required to open its eyes, not be blinded, but rather open its eyes to the other reasonable interpretations of this provision. We're only insisting that the district court follow clearly established, be required to follow clearly established Ohio law holding that when there is more than one reasonable interpretation of a provision of a contractual provision, that that provision be interpreted in favor of the insurer. Now, what do you think of, I thought the hypo of the Ohio Supreme Court case and McNeil and punitive damages. Imagine if the jury, instead of awarding punitive damages and a separate attorney's fees, had awarded the attorney's fees as the punitive damages. And so the jury had picked, well, we don't know what the appropriate number is, but we're going to say the punitive damages should be the attorney's fees. Would you agree that that would fall within the punitive damages provision? I would not, your honor. Neil Pettit explicitly says that it doesn't. But that's because that's because under Ohio law, the separate award of attorney's fees aside from punitive damages was deemed compensatory. But when you actually, when you actually say the attorney's fees are the sanction, what seems to me to be a somewhat different case. But but juries are not empowered to do that under Ohio law. I mean, there's no attorney's fees are determined by judges. There's no submission to a jury of reasonable fees. That just doesn't that doesn't happen. The jury checks the box as to whether attorney's fees are awarded. And then there's a hearing afterwards where just just assume it's not Ohio law. Just just assume a federal law said the sanction is attorney's fees rather than separate from the sanction. If the federal law expressly defined the attorney's fee award as a sanction, it would be a different question. But to get to your question about or I believe it was Judge Larson's question about whether a showing of ambiguity requires us to show that we have the best reading. That's not the standard. If if a court were to that our reading would have to be the best one that would write the very meaning of ambiguity out of the law. Essentially, it would it's it's doesn't require perfect ambiguity. It doesn't require equivalent ambiguity. It only requires some ambiguity. So if there is any reasonable interpretation at all, then Ohio law requires that to be construed against the insurer because the insurer could have written the ambiguity out of the contract, as is clearly the case here. And I want to emphasize that I can't emphasize this enough. Actually, the question isn't whether the term sanctions is ambiguous. In the question was not whether such a fee award under the idea could comfortably fit inside the definition of sanction. The question is whether an attorney fee award under the idea can only be fairly interpreted as a sanction. That's the question. A sanction is what a sanction is. The parties essentially agree on the Blacks Law Dictionary definition of it as essentially a penalty. And there is case after case in Ohio that says this is not a penalty. This is compensatory in nature. This is awarded as a part of cost. Its determination is based on the cost incurred. Again, whether that's the best argument or the best interpretation, or the most likely interpretation doesn't matter. The question is whether there is another reasonable interpretation. And I would say you can look at the Neil Pettit case alone that says, boy, even where a party was proven to have engaged in malicious, intentional, tortious conduct, it actually really was found to have done something bad that warranted a punishment. And fees were only awarded because of that, could have only been awarded because of that. The Ohio Supreme Court says that still doesn't count as a sanction unless the policy expressly says so. I think your point is very interesting that the parties agree on the word and it's just the application. It's almost as if the ambiguity is not in the contract, but in the federal statute and the meaning of the federal statute. How should that play into Ohio insurance law? The question is whether the term unambiguously applies. It's not whether a single term is ambiguous, it's whether the application of this term sanction unambiguously applies. And I see my time is up. I would encourage the court to really focus on our reply brief as opposed to our opening brief. I'll admit that we perhaps over-relied on the Neil Pettit decision, but I think that the analysis is right there and is inarguable under Ohio law as set forth in our reply brief. I thank you for the court's attention today to this matter. Okay. Well, thank you, Mr. Patakos and Mr. Stalker. We really do appreciate your arguments this morning. As I said, at the outset of the case, we appreciate your briefing as well. The case will be submitted.